IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| AARON HORNE, M.D., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 6:24-cv-130-JDK |
| § | |
| TEXAS SPECIALTY PHYSICIANS, § | |
| D/B/A PALESTINE MEDICAL § | |
| GROUP, et al., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

This is a workplace discrimination and retaliation dispute. Plaintiff Aaron Horne sued his former employers Palestine Medical Group ("PMG"), ScionHealth ("Scion"), and Palestine Regional Medical Center ("PRMC") as well as his former supervisors Jonathan Savage (CFO of PMG), Michael Matthews (Senior VP of Scion), and Roy Finch (CEO of PRMC) for race discrimination and retaliation. Docket No. 1. Horne claims that Defendants violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act, and the Texas Commission on Human Rights Act ("TCHRA"), codified in Chapter 21 of the Texas Labor Code. Horne also claims that Defendants tortiously interfered with his contract with his new employer, Summit Health. *Id.* ¶¶ 72–97.

Defendants move to dismiss parts of the complaint under Federal Rule of Civil Procedure 12(b)(6). Docket No. 7. First, Defendants contend that Horne's claims under Title VII and the Texas Labor Code are untimely. *Id.* at 2. Second, Defendants

assert that Horne's tortious interference claim fails to allege sufficient facts for relief to be granted. *Id.* As explained below, the Court **GRANTS** the motion in part and dismisses Plaintiff's Title VII and TCHRA claims as to all allegations except to the extent they are based upon the May 24, 2023 Texas Medical Board hearing. The Court also **GRANTS** Defendants' motion to dismiss Horne's tortious interference claim. The Court **DENIES** the motion in all other respects.

I.

The relevant facts as alleged in Horne's complaint are as follows. *See Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986) (noting that a court must "accept as true all well pleaded facts in the complaint" when evaluating a Rule 12(b)(6) motion).

Horne is "a black, African American male" who started working for PMG, PRMC, and Scion as an interventional cardiologist in July 2021. Docket No. 1 ¶¶ 13, 34. Horne was also a "health equity advocate," "doing outreach" into the local "African American community on behalf of PMG and PRMC." *Id.* ¶ 36.

In February 2022, a local reverend informed Horne that one of his congregants had died after treatment at PRMC, and "the deceased's family had many questions and concerns about the care their loved one received." *Id.* ¶ 39. Horne took this concern to Defendant Finch (PRMC's CEO), but Finch "was wholly unresponsive and unsupportive." *Id.* ¶ 40. The next day, many of Horne's non-African American co-workers approached Horne and asked him why he was involved in matters unrelated to his personal patients. *Id.* ¶ 41. Horne complained about this "hostile" interaction

to Finch, but Finch "openly threatened to terminate [Horne's] employment." *Id.* ¶ 42. Horne next complained to Defendant Savage (PMG's CFO) and filed a complaint with the human resources department. *Id.*

After this, the leadership at PMG, PRMC, and Scion "became openly hostile to [Horne's] bridge building and diversity, equity, and inclusion advocacy activities." *Id.* ¶ 44. Horne feared they would find an excuse to "railroad" him, so he was "constructively discharged and forced to resign his position." *Id.* Around March 7, 2022, Horne resigned effective June 1, 2022. *Id.*

Early on April 12, 2022, Horne learned his mother was having a medical emergency and went to manage her care. *Id.* ¶ 47. While Horne was caring for his mother, one of the nurses from the "Cath Lab" called him at 7:40 a.m. to inform him that he had an elective patient procedure scheduled at that time. *Id.* But, Horne contends, there was no such procedure scheduled that morning. *Id.* ¶¶ 47–49. Horne rescheduled the procedure without causing any medical harm to the patient and continued to take calls from work. *Id.* ¶¶ 50–51. Finch called Horne at 10:30 a.m. and allegedly accused him of "an ethical breach by failing to perform" the procedure. *Id.* ¶ 52. Finch also allegedly threatened to report Horne to Defendants' licensing body. Horne reported this interaction to human resources head Jennifer Robertson. *Id.*

Two days later, Robertson told Horne to attend a zoom meeting with her and Finch. In the meeting, Finch gave Horne a termination letter from Defendant

3

Matthews (Scion's Senior VP) that accused Horne of fraud, endangering patients, and dishonesty. *Id.* ¶¶ 53–54.

Horne alleges that the discrimination and retaliation did not end when he left Defendants' employment. On April 22, 2022, PRMC's Medical Executive Committee began investigating Horne for misconduct—namely, lying to hospital staff and being unreachable on April 12—and sent him a letter informing him of the investigation. *Id.* ¶ 56. Defendants also allegedly launched other post-termination investigatory actions, including filing a complaint with the Texas Medical Board and submitting negative allegations to the National Practitioner DataBank. *Id.* ¶¶ 57–58. The Medical Board investigated Horne throughout 2022 and 2023, and Defendants reasserted their allegations at a hearing with the Board in May 2023. *Id.* ¶¶ 57, 61. The Medical Board dismissed the complaint on June 27, 2023. *Id.* ¶ 62.

In June 2022, Horne learned of the negative information in the DataBank when he accepted a new job at Summit Health. *Id.* ¶ 58. Horne alleges that the DataBank report "hindered and delayed" his credentialing at two hospitals, which was necessary for his employment at Summit Health. *Id.* ¶¶ 60, 96.

Horne filed a charge of discrimination with the EEOC on May 17, 2023. *Id.* ¶¶ 6–7. He filed this lawsuit on April 10, 2024.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted." "[C]laims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'"

4

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). Claims may also be dismissed if the plaintiff fails to plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must "make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

As noted above, in evaluating a Rule 12(b)(6) motion, the Court must "accept as true all well pleaded facts in the complaint." *Campbell*, 781 F.2d at 442. "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings . . . ." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).

### III.

Defendants move to dismiss Horne's Title VII and TCHRA claims as untimely and his tortious interference with a contract claim for failure to state a claim. As explained below, the Court concludes that the Title VII and TCHRA claims are timely to the extent they are based on Defendants' alleged conduct regarding the Texas Medical Board hearing. These claims, however, are untimely to the extent they are based on other alleged misconduct. Horne's tortious interference claim should also

be dismissed because Horne has failed to plead sufficient facts to state a plausible claim of tortious interference.

### A.

First, Horne's Title VII claims. Defendants cite 41 U.S.C. § 2000e-5(e)(1), which requires a plaintiff asserting a claim under Title VII to file a charge of discrimination with the EEOC "within [300] days after the alleged unlawful employment practice occurred." § 2000e-5(e)(1).[1] Because Horne filed his charge on May 17, 2023, Defendants argue, any claims based on conduct that occurred more than 300 days before that day—or before July 21, 2022—are time-barred. Docket No. 7 at 5–7.

The 300-day time bar applies to each "discrete act" of discrimination or retaliation. *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010); *Morgan*, 536 U.S. at 105. Discrete acts are "easily identifiable incidents," such as "termination." *Tillman*, 377 F. App'x at 349 (citing *Morgan*, 536 U.S. at 114). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Therefore, all of Horne's Title VII claims based on discrete acts that occurred before July 21, 2022, are untimely.

---

[1] The 300-day limitations period applies to complainants who "initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1). Complainants who do not file a charge with a state agency generally must file their EEOC charge within 180 days of the allegedly unlawful employment practice. *Id.* But because Texas is a "deferral state," the 300-day limitations period governs. *See* 29 C.F.R. §§ 1601.13(a)(3)(iii), (4)(ii)(A) ("Such filing is timely if the charge is received within 300 days from the date of the alleged violation."); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

This includes all claims of discrete acts that occurred during Horne's employment, which ended on April 14, 2022—more than three months outside the window. *See id.*; Docket No. 1 ¶ 53. Most of Horne's post-employment allegations also fall outside the 300-day window. Specifically, Horne alleges that Defendants' Medical Executive Committee investigated Horne for the Cath Lab incident, but the complaint's only reference to this investigation states that it began on April 22, 2022. *Id.* ¶ 56. Horne's allegations regarding the DataBank are similarly stale. The complaint asserts that "[i]n June 2022 . . . [Horne] learned" that Defendants had "presented . . . knowingly false statements" to the DataBank. *Id.* ¶ 58. The complaint does not allege that either of these post-employment acts occurred within the 300-day window. Therefore, these "prior discrete discriminatory acts are untimely filed and no longer actionable." *Morgan*, 539 U.S. at 115.

Horne's claims regarding the hearing before the Texas Medical Board, however, are timely because Defendants allegedly pursued their case against Horne well into the 300-day window. Docket No. 1 ¶¶ 57, 61. Defendants aver that Horne's "only factual allegation that falls within the 300-day period is that the Texas Medical Board found in Plaintiff's favor in June 2023." Docket No. 7 at 7. But they miss something important: Defendants reasserted their accusations against Horne at a hearing before the Board on May 24, 2023. Docket No. 1 ¶¶ 57, 61. Horne's Title VII claims regarding the May 24 Board hearing are therefore timely.

Horne's argument that all his claims are timely is unavailing. Horne contends that the continuing violations doctrine makes timely the entirety of his Title VII

claims. *See* Docket No. 13 at 9. But the continuing violations doctrine applies only to hostile work environment claims—not claims of discrete acts. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), as revised (Mar. 13, 2017). And even if Horne plausibly alleged a hostile work environment claim, he must still allege a "component act" that falls within the 300-day window. *Morgan*, 536 U.S. at 117 (quoting § 2000e-5(e)(1)). He has not done so here because he was terminated well outside the window. Horne, moreover, cannot rely on post-employment conduct because such conduct cannot create a hostile work environment. Indeed, once a plaintiff has left the workplace, he can no longer be subjected to a hostile work environment. Horne's characterization of Defendants' acts as a "continuous practice," Docket No. 1 ¶¶ 71, 74, fails because "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Morgan*, 536 U.S. at 111. The continuing violations doctrine therefore does not save Horne's claims.[2]

Accordingly, Defendants' motion to dismiss the Title VII claims is **GRANTED** to the extent the claims are based on conduct occurring before July 21, 2022, and the motion is **DENIED** to the extent the claims are based on the May 24, 2023 Medical Board hearing.

---

[2] Horne's argument that he was not on notice to defend his rights until August 2022, Docket No. 13 at 9–10, fails because the Supreme Court and Fifth Circuit have rejected the notice factor in determining whether the continuing violations doctrine applies to a hostile work environment claim. *Heath*, 850 F.3d at 739 (noting that *Morgan* rejected the rule "that the continuing violation doctrine does not apply when an employee was or should have been aware earlier of a duty to assert her rights").

### B.

Now for Horne's claims under the TCHRA, which Defendants contend are similarly untimely. Docket No. 7 at 4–7. While the parties are correct that Title VII and the TCHRA are governed by the same substantive law, TEX. LABOR CODE § 21.001 (purpose of the TCHRA is "the execution of the policies of Title VII"), they do have distinct procedural requirements. As noted above, Title VII requires a plaintiff in Texas to file a charge of discrimination within 300 days of an unlawful employment practice, but the TCHRA gives a plaintiff only 180 days for his state law claims. § 21.202. Because Horne filed his charge of discrimination on May 17, 2023, all claims for discrete acts that occurred more than 180 days prior to that date—or before November 8, 2022—are untimely. And as just explained, only Defendants' alleged conduct related to the hearing falls within this 180-day window. All of Horne's other allegations are therefore untimely under the TCHRA. *See id.*

Accordingly, Defendants' motion to dismiss the TCHRA claims is **GRANTED** to the extent the claims are based on conduct occurring before November 8, 2022, and the motion is **DENIED** to the extent the claims are based on the May 24, 2023 Board hearing.

### C.

Finally, Horne's tortious interference with a contract claim. Defendants seek to dismiss this count for failure to state a claim. The complaint contends Defendants interfered with the contract between Horne and his new employer, Summit Health, by submitting false negative information about him to the National Practitioner DataBank. Docket No. 1 ¶¶ 94–97.

9

Under Texas law, tortious interference with an existing contract has the following elements: (1) a valid contract subject to interference existed; (2) the defendant willfully and intentionally interfered with the contract; (3) the defendant caused the other party to the contract to breach the contract; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021), as revised (Mar. 2, 2021)); *see also El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017) (holding that a plaintiff must prove breach in a tortious interference case).

The problem with Horne's claim is that the complaint never alleges Summit Health breached his employment contract—a required element of the claim. *WickFire*, 989 F.3d at 354 ("Our review of Texas law indicates that to prevail on an interference claim, the plaintiff must 'present evidence that some obligatory provision of a contract [was] breached.'" (quoting *Walker*, 938 F.3d at 749)). Horne avers in his response that "a breach occurred," but the Court is limited to the complaint at the Rule 12(b)(6) stage. *Collins*, 224 F.3d at 498. Thus, Horne has failed to state a claim of tortious interference upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Accordingly, Defendants' motion to dismiss this claim is **GRANTED**.

\* \* \*

Defendants also move the Court to dismiss the individual Defendants Finch, Matthews, and Savage because Horne implicates them only in the tortious

interference claim. Because that claim is dismissed and Horne does not bring any other claims against them, Defendants' motion to dismiss Finch, Matthews, and Savage is **GRANTED**.

## IV.

For the reasons discussed above, Defendants' motion to dismiss is **GRANTED IN PART**. Docket No. 7. Horne's claims for discrimination and retaliation under Title VII (i.e., Claims 2 and 3) and the TCHRA (i.e., Claim 4) are **DISMISSED** except to the extent they are based on Defendants' conduct surrounding the May 24, 2023 Texas Medical Board hearing. Similarly, Horne's tortious interference with a contract claim (i.e., Claim 5) is **DISMISSED**. Defendants Finch, Matthews, and Savage are also **DISMISSED** from the case.

Because the complained-of incidents occurred outside the limitations period, amendment to Horne's Title VII and TCHRA claims would be futile. Accordingly, those dismissals are with prejudice. The dismissal of Horn's tortious interference claim is without prejudice.

So **ORDERED** and **SIGNED** this **24th** day of **November, 2024.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE